Jessie Lundberg
Rochelle Loveland
Lundberg Law Office PLLC
415 N. Higgins Avenue
Missoula, MT 59802
Telephone: (406) 721-3000
Facsimile: (406) 721-5912
jessie@lundberglawyer.com
Montana State Bar No. 9641

*Attorneys for Plaintiff*

FILED   JAN 2 9 2016

SHIRLEY E. FAUST, CLERK
By_____
                    Deputy

IN THE FOURTH JUDICIAL DISTRICT COURT
COUNTY OF MISSOULA, STATE OF MONTANA

| | |
|---|---|
| CHRISTY MILBURN,<br><br>              Plaintiff,<br><br>     vs.<br><br>MISSOULA HOUSING AUTHORITY and UNITED STATES DEPARTMENT OF AGRICULTURE RURAL DEVELOPMENT,<br><br>              Defendants. | Dept. No. 2<br><br>Cause No. DV-16-89<br>Robert L. Deschamps, III<br><br>**COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff CHRISTY MILBURN, through counsel, and for her

Complaint against Defendants, states and alleges as follows:

1

## I.   PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Christy Milburn is an individual residing in the city of Missoula, Missoula County, Montana.

2.     Defendant Missoula Housing Authority ("MHA") is a public non-profit corporation that, among other things, develops low-income rental housing and houses for purchase, and administers Section 8 Housing vouchers funded by the United States Department of Housing and Urban Development ("HUD").

3.     At all times relevant to this Complaint, MHA was providing low-income housing services to individuals in Montana, including Missoula County.

4.     Defendant United States Department of Agriculture ("USDA") Office of Rural Development ("RD") is a federal agency that, among other things, funds and services mortgage loans for rural and/or low-income households.

5.     At all times relevant to this Complaint, RD was conducting lending and servicing activities in Montana, including Missoula County.

6.     This Court has jurisdiction over this matter and venue is proper in Missoula County pursuant to §§ 25-2-121 and -122, MCA, because MHA and RD each conduct business throughout Montana, including Missoula County.

## II.   FACTS

7.     MHA administers multiple programs involving "Housing Assistance

Payments," or HAP, to assist low-income individuals in purchasing a home. The programs partner with various lenders to provide the homebuyers with mortgage financing. At all times relevant to this action, MHA's administration of these programs was supervised by its employee Jim McGrath, Admissions and Occupancy Manager ("Mr. McGrath").

8.    In 2005, Plaintiff and her children were homeless. They were accepted into the "Gateway" "welfare-to-work" program through the Salvation Army, and provided housing at a local motel while Plaintiff worked her way through the program. Based on Plaintiff's diligence and success in the program, her case managers recommended her for a place in the "Joseph Residence Transitional Housing" project that was just being built. The Joseph Residence would provide program participants with stable housing for up to two years while they gained employment and restored financial stability. Plaintiff was accepted into the program, and she and her children moved into the Joseph Residence.

9.    While at the Joseph Residence, Plaintiff worked diligently to comply with every house rule, attended required classes, cleaned up old financial obligations, and began to work on building her creditworthiness and employment history. As a result, within only one year, Plaintiff and her children became the first family to graduate from the Joseph Residence with a Section 8 housing voucher. Beginning in 2007, Plaintiff became a "Housing Choice" voucher holder, a rent subsidy

voucher through the Housing and Urban Development (HUD) Section 8 program whereby participants have the opportunity to choose their own rental housing to which the subsidy is then applied.

10.    From 2007 to 2012, Plaintiff was a model housing voucher holder, and she and her family occupied the same rental they obtained upon transitioning from the Joseph Residence.

11.    In 2011, Plaintiff applied to a new program that was just getting off the ground, a "mutual self-help" homeownership program administered by MHA. The program was for first-time homeowners who had a low income and were currently receiving a Housing Choice Voucher. Participation in the program consisted of the prospective first-time homeowners jointly contributing "sweat equity" to assist in building homes for the program, in exchange for the opportunity to purchase one of the homes.

12.    Mortgage financing for this program was provided by the United States Department of Agriculture Rural Development program ("RD"). The participants' Section 8 rent voucher would be converted to a mortgage voucher, which would subsidize the participants' monthly mortgage payment. Any remaining balance after application of the subsidy would be paid by the participant.

13.    RD also serviced the participants' mortgage loans. As such, the monthly mortgage statements sent to each homebuyer came from RD, and the monthly

mortgage payments were owed to and collected by RD. Specifically, the payments were submitted to and processed by RD's Customer Service Center ("CSC") in St. Louis, Missouri.

14.    Plaintiff was accepted into the program, and successfully completed all its requirements, including contributing 30 hours per week of sweat equity to the building project, while maintaining her employment and parenting her two teenagers. She was approved for the financing offered through RD, and successfully purchased one of the homes built through the program.

15.    Payment of each participant's monthly mortgage payment initially worked as follows: MHA forwarded the participant's monthly Housing Choice Voucher directly to RD, and the participant separately forwarded any remaining amount he or she owed, also directly to RD.

16.    MHA stated to participants that MHA was instructed to use this procedure, ostensibly by RD, because if the subsidy vouchers were provided directly to the participants for the participants to submit their own payments to RD, the vouchers would be counted as income to the participants, which could disqualify the participants from other benefit programs for low-income individuals.

17.    Around August 2013, Plaintiff moved into her new home, and proceeded to begin making her monthly mortgage payment as of September 2013.

18.    Plaintiff's very first mortgage statement, for the month of September,

claimed she was two months behind on her mortgage. After Plaintiff contacted RD, they corrected the statement, and Plaintiff's statements were correct thereafter, until February of 2014.

19.    In February of 2014, Plaintiff received a monthly mortgage statement from RD that claimed Plaintiff was late on her payments, and reflected late fees.

20.    At all times, Plaintiff paid her portion of her monthly mortgage payment to RD before the required due date.

21.    When Plaintiff contacted MHA, MHA employees claimed that MHA was timely submitting the required vouchers and homebuyer contributions to RD.

22.    When Plaintiff contacted RD, RD employees claimed that it had not received all payments from MHA in a timely, accurate manner.

23.    RD employees stated to Plaintiff that part of the problem was that MHA was submitting payments for multiple accounts in one consolidated check, and was submitting checks only every three months, causing the posting of the payments to be delayed. Further, RD indicated that one or more of the consolidated checks had contained incorrect mortgage loan account numbers for accounts that were actually closed. Finally, it stated at least one of the consolidated checks may have been reversed.

24.    When Plaintiff conveyed to MHA that the reason her mortgage payments were not being properly processed was because of the way MHA was submitting

6

them, MHA employees indicated they were aware of the problem but were unable or unwilling to send separate checks due to limitations in MHA's software.

25.    MHA later stated it subsequently changed its procedure as of June 2014, and that all check it sent to RD thereafter were separated by homeowner.

26.    However, based upon information and belief, MHA again grouped one or more homebuyer payments into consolidated checks after June 2014.

27.    After MHA changed its procedure for submitting homebuyer mortgage payments to RD, Plaintiff nonetheless continued to receive late notices and late fees. The notices RD sent to Plaintiff also advised: "Your account has been reported to the major credit bureau as delinquent. If you do not make your payment or contact us, you may lose your home."

28.    The ongoing inaccuracies with Plaintiff's mortgage loan were at least in part due to the problems that had already occurred due to MHA's method of submitting payments, which problems had not yet been reversed and resolved.

29.    Throughout 2013 and 2014, Plaintiff sought assistance from multiple individuals at MHA, the RD Missoula Area Office, and the RD Customer Service Center, including making dozens of telephone calls.

30.    Plaintiff eventually received some assistance from a local, Missoula-based RD Loan Technician named Melissa Ciliento. Ms. Ciliento's efforts included reviewing Plaintiff' loans in order to try to determine what had happened.

31.    On January 16, 2015, almost a year after Plaintiff first started receiving late notices from RD, Ms. Ciliento e-mailed Mr. McGrath at MHA regarding Plaintiff's account. Ms. Ciliento informed Mr. McGrath that she had fully reviewed Plaintiff's account, and confirmed that Plaintiff had never made a single late payment. Ms. Ciliento advised MHA that the problems were happening because of the way MHA had been submitting Ms. Milburn's payments, and that a different way of submitting payments needed to be found. Specifically, Ms. Ciliento suggested that MHA provide the housing voucher directly to Plaintiff and let Plaintiff submit both the voucher and her portion of the payment together, directly to RD, instead of having MHA do it. Finally, Ms. Ciliento advised that immediate steps needed to be taken to correct the damage that had been done to Ms. Milburn's credit report, as well as reverse all the incorrect late fees that had accumulated on the account.

32.    On that same date, January 16, 2015, Mr. McGrath responded to Ms. Ciliento stating that MHA had never missed or made any payments late. In his email, Mr. McGrath acknowledged that Plaintiff had never been late on her payments to MHA, and agreed to attempt to address the problems with Plaintiff's account.

33.    On or around January 29, 2015, RD sent Plaintiff another monthly statement showing her loan was still delinquent according to its records.

34.    On or around February 13, 2015, Mr. McGrath sent Plaintiff a letter

acknowledging that multiple program participants were having problems with their

monthly payments being properly applied to their mortgage. The letter stated that

MHA was changing its payment system such that program participants were to

now open a separate bank account into which MHA would deposit the monthly

subsidy payments, with each participant to then add his or her additional

contribution and submit the full mortgage payment to RD. MHA stated this would

resolve the problems that Plaintiff and other program participants were having,

while preventing the housing subsidy from being considered income to them.

35.    MHA's February 13, 2015 letter to Plaintiff stated that, with homebuyers in

other programs administered by MHA, MHA normally provides the monthly

subsidy payments to the homebuyers through direct deposit, and requires the

homebuyers to submit their own mortgage payments to the loan servicer. However,

this was, in fact, not MHA's practice for the five years Plaintiff was a housing

voucher holder.

36.    Throughout the spring of 2015, Plaintiff continued to receive automated

messages from RD stating she needed to contact customer service. Each time she

did so, she was informed her account was delinquent. Each time, she explained her

whole story again.

37.    On June 18, 2015, Plaintiff spoke with Debra Kane, a default collection

supervisor. Ms. Kane stated she found two payments from MHA that had contained incorrect account numbers, but that the payments had actually been applied to another borrower's active account, not a closed account as Plaintiff had initially been told. Ms. Kane stated the payments would need to be moved from that account over to Plaintiff's account.

38.    As of August 2015, RD continued to send Plaintiff monthly statements indicating her account was past due.

39.    Based upon information and belief, MHA failed to reasonably and timely submit mortgage payments to RD on behalf of Plaintiff.

40.    Based upon information and belief, RD failed to reasonably and timely apply mortgage payments submitted to it on behalf of Plaintiff by MHA and Plaintiff.

41.    Defendants failed to initially enact reasonable procedures to ensure the accurate and timely application of Plaintiff's mortgage payments.

42.    After Defendants were on notice of the problems that had arisen with regard to Plaintiff's mortgage payments, Defendants failed to identify and implement reasonable procedures to timely correct said problems.

43.    Based upon information or believe, one or both Defendants caused one or more of Plaintiff's payments to be incorrectly applied to another borrower's mortgage loan.

44.     Defendants caused Plaintiff to receive dozens of telephone calls, including automated messages, informing her she was delinquent and demanding that she contact RD to resolve her past due payments. Each time she answered the call or returned the message, she was forced to repeat the whole explanation of why she was, in fact, not delinquent at all.

45.     Defendants caused Plaintiff to receive numerous written notices from RD incorrectly stating Plaintiff was delinquent on her loan, charging late fees, demanding payment, and advising that RD had reported her as delinquent to the credit reporting agencies.

46.     In fact, RD was not reporting Plaintiff as delinquent to the credit reporting agencies, and never did so, despite its repeated written claims that it had done so.

47.     Throughout Plaintiff's communications with Defendants regarding the problems with misapplication of her payments, Defendants advised Plaintiff not to worry about the late notices and late fees, stating that one or both Defendants would fully resolve the issues without further action from Plaintiff.

48.     Defendants' actions have injured Plaintiff.  Plaintiff's damages include, but are not limited to: lost time spent communicating with Defendants; extra payments and late fees submitted by Plaintiff in attempts to bring her mortgage current even though she knew she had never missed any previous payments; lost opportunities for credit; and extreme emotional distress due to being threatened with having her

credit destroyed, her family becoming homeless again, and losing everything for which she had worked for the past ten years.

## CAUSES OF ACTION AGAINST MHA

## I. COUNT ONE - NEGLIGENCE

49.    The preceding paragraphs are re-alleged as though set forth in full hereunder.

50.    MHA owed a duty to Plaintiff to timely and properly submit Plaintiff's monthly housing voucher to RD. This duty was to be performed with care, skill, reasonable expediency, in good faith, and in compliance with program guidelines and other applicable law.

51.    MHA breached this duty by failing to forward Plaintiff's monthly housing voucher to RD in a reasonable and/or timely manner; advising Plaintiff that the problems would be resolved forthright; providing inaccurate advice to Plaintiff; and failing to use reasonable policies and procedures to ensure proper application of Plaintiff's payments.

52.    MHA is liable for its negligent acts.

53.    Plaintiff has been harmed by MHA's actions as set forth above.

## II. COUNT TWO- NEGLIGENT MISREPRESENTATION

54.    The preceding paragraphs are re-alleged as though set forth in full hereunder.

55.   MHA owed Plaintiff a duty to use reasonable care in communicating information to her.

56.   MHA breached its duty by negligently and/or intentionally misrepresenting material facts to Plaintiff, including but not limited to stating that MHA was properly submitting Plaintiff's payments to RD to the best of MHA's ability; that MHA stopped submitting consolidated payments by June 2014; and that MHA could not handle Plaintiff's monthly mortgage payments in a different manner that would ensure timely submission of payments and application of payments by RD.

57.   MHA's representations were untrue.

58.   MHA made these representations either knowing they were untrue or without any reasonable grounds for believing them to be true.

59.   MHA made these representations with the intent to induce Plaintiff to rely upon them.

60.   Plaintiff was unaware of the falsity of the representations, acted in reliance on MHA's representations by continuing to submit payments in the manner required by MHA, and was justified in relying upon them.

61.   Plaintiff sustained damages as a result of MHA's misrepresentations.

### III. COUNT THREE - CONSUMER PROTECTION ACT

62.   The preceding paragraphs are re-alleged as though set forth in full hereunder.

63.     This action is subject to the Montana Consumer Protection Act, §§ 30-14-101 et seq., MCA.  Section 30-14-103, MCA, prohibits unfair methods of competition and unfair and/or deceptive acts or practices.

64.     MHA's unfair or deceptive acts or practices include, but are not limited to:

    a.    Failing to implement reasonable procedures for timely submission of Plaintiff's mortgage payments to RD;

    b.    Representing to Plaintiff that MHA could not arrange for Plaintiff's payments to be processed in a different manner;

    c.    Representing to Plaintiff that the problems were solely due to RD's actions instead of taking affirmative steps to correct the problems;

    d.    Representing to Plaintiff that MHA submitted no further payments to RD by consolidated check after June 2014.

65.     Plaintiff has suffered and continues to suffer damages as a result of MHA's unfair or deceptive acts or practices and is entitled to monetary damages including actual damages, statutory treble damages, costs and attorney fees.

## IV. COUNT FOUR: BREACH OF CONTRACT

66.     The preceding paragraphs are re-alleged as though set forth in full hereunder.

67.     MHA entered a contract with Plaintiff.

68.     MHA breached its contract with Plaintiff by, including but not limited to, failing to properly and timely submit Plaintiff's mortgage payments to RD.

69.     As a result of MHA's breach of contract, Plaintiff was damaged as previously set forth above.

## V. COUNT FIVE: BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

70.    The preceding paragraphs are re-alleged as though set forth in full

hereunder.

71.    MHA entered a contract with Plaintiff.

72.    MHA breached its contract with Plaintiff by breaching the implied covenant

of good faith and fair dealing, by:

      a.  Acting unreasonably;

      b.  Misleading and deceiving Plaintiff as set forth above; and

      c.  Using unfair or deceptive acts or practices, as set forth above.

73.    MHA's actions were not honest in fact and do not comply with the

observance of reasonable standards of fair dealing in the trade of loan servicing.

74.    As a result of MHA's breach of the implied covenant of good faith and fair

dealing arising from its contract with Plaintiff, Plaintiff was damaged as previously

set forth above.

## VII. COUNT SIX: PUNITIVE DAMAGES

75.    The preceding paragraphs are re-alleged as though set forth in full

hereunder.

76.    MHA had knowledge of facts or intentionally disregarded facts which

created a high probability of injury to Plaintiff, yet deliberately proceeded to act in

conscious or intentional disregard of, or indifference to, the high probability of injury to Plaintiff.

77.    MHA's conduct was malicious as defined under § 27-1-221(2), MCA, entitling Plaintiff to an award of punitive damages.

## CAUSES OF ACTION AGAINST DEFENDANT RD

### I. COUNT ONE - NEGLIGENCE

78.    The preceding paragraphs are re-alleged as though set forth in full hereunder.

79.    RD acted as a loan servicer by collecting and processing monthly payments toward Plaintiff' mortgage loans.

80.    RD advised Plaintiff regarding the conduct of Plaintiff' financial affairs by advising Plaintiff that one or both Defendants would correct the ongoing payment problems without further action from Plaintiff.

81.    Plaintiff relied on RD's advice for several months, and relied on RD and/or MHA to resolve the payment problems.

82.    A fiduciary relationship arose between Plaintiff and RD when RD advised Plaintiff as to the conduct of their financial affairs and Plaintiff relied on that advice.

83.    Because RD created a fiduciary duty to Plaintiff, it further created an implied covenant of good faith and fair dealing between the parties.

84.    RD, acting as a loan servicer, owed a duty to Plaintiff to fairly and properly service Plaintiff' loan contract and apply Plaintiff' payments. This duty was to be performed with care, skill, reasonable expediency, in good faith, and in compliance with program guidelines, and other applicable law.

85.    RD breached this duty by advising Plaintiff that the problems were solely the responsibility of MHA; advising Plaintiff that the problems would be resolved forthright by MHA and/or RD; sending Plaintiff late notices and charging late fees despite having actual notice that Plaintiff was submitting all payments timely to MHA; instructing Plaintiff to send payments that were not actually owed; failing to properly apply payments submitted by MHA and/or Plaintiff; and failing to use reasonable policies and procedures to ensure proper application of Plaintiff's payments.

86.    RD is liable for its negligent acts.

87.    Plaintiff has been harmed by RD's actions as set forth above.

## II. COUNT TWO- NEGLIGENT MISREPRESENTATION

88.    The preceding paragraphs are re-alleged as though set forth in full hereunder.

89.    RD owed Plaintiff a duty to use reasonable care in communicating information to them.

90.    RD breached its duty by negligently and/or intentionally misrepresenting

material facts to Plaintiff, including but not limited to stating that RD was properly applying Plaintiff's payments to RD to the best of RD's ability; that RD could not take any actions to ensure timely application of payments submitted by MHA and/or Plaintiff; and representing that Plaintiff was delinquent on their loans.

91.    RD's representations were untrue.

92.    RD made these representations either knowing they were untrue or without any reasonable grounds for believing them to be true.

93.    RD made these representations with the intent to induce Plaintiff to rely upon them.

94.    Plaintiff was unaware of the falsity of the representations, acted in reliance on RD's representations by continuing to submit payments in a manner that resulted in misapplication of payments, and submitting extra payments and late fees in the hopes of bringing her loan out of delinquent status.

95.    Plaintiff was justified in relying upon RD's representations.

96.    Plaintiff sustained damages as a result of RD's misrepresentations, as previously set forth above.

### III. COUNT THREE - CONSUMER PROTECTION ACT

97.    The preceding paragraphs are re-alleged as though set forth in full hereunder.

98.    This action is subject to the Montana Consumer Protection Act, §§ 30-14-

101 et seq., MCA. Section 30-14-103, MCA, prohibits unfair methods of

competition and unfair and/or deceptive acts or practices.

99.   RD's unfair or deceptive acts or practices include, but are not limited to:

    a.    Failing to implement reasonable procedures for timely submission and application of Plaintiff's mortgage payments to RD;

    b.    Representing to Plaintiff that RD could not arrange for Plaintiff's payments to be processed in a different manner;

    c.    Failing to address Plaintiff's complaints and instead representing to Plaintiff that the problems were solely due to MHA's actions instead of taking affirmative steps to correct the problems;

    d.    Sending notices and/or statements and making telephone calls to Plaintiff claiming Plaintiff was delinquent on her loan;

    e.    Assessing Plaintiff late fees when she was not late on payments;

    f.    Reporting Plaintiff to the credit bureaus as delinquent, despite knowing she was timely submitting her payments.

100.   Plaintiff has suffered and continues to suffer damages as a result of RD's

unfair or deceptive acts or practices and is entitled to monetary damages including

actual damages, statutory treble damages, costs and attorney fees.

## IV. COUNT FOUR: BREACH OF CONTRACT

101.   The preceding paragraphs are re-alleged as if set forth in full hereunder.

102.   RD entered a contract with Plaintiff.

103.   RD breached its contract with Plaintiff by, including but not limited to,

failing to properly and timely service Plaintiff's mortgage payments from Plaintiff

and MHA.

19

104.   As a result of RD's breach of contract, Plaintiff was damaged as previously set forth above.

### V. COUNT FIVE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

105.   The preceding paragraphs are re-alleged as ifset forth in full hereunder.

106.   RD entered a contract with Plaintiff.

107.   RD breached its contract with Plaintiff by breaching the implied covenant of good faith and fair dealing, by:

   a.  Acting unreasonably;

   b.  Misleading and deceiving Plaintiff as set forth above; and

   c.  Using unfair or deceptive acts or practices, as set forth above.

108.   RD's actions were not honest in fact and do not comply with the observance of reasonable standards of fair dealing in the trade of loan servicing.

109.   As a result of RD's breach of the implied covenant of good faith and fair dealing arising from its contract with Plaintiff, Plaintiff was damaged as previously set forth above.

### VII. COUNT SIX: PUNITIVE DAMAGES

110.   The preceding paragraphs are re-alleged as if set forth in full hereunder.

111.   RD had knowledge of facts or intentionally disregarded facts which created a high probability of injury to Plaintiff, yet RD deliberately proceeded to act in

conscious or intentional disregard of, or indifference to, the high probability of injury to Plaintiff.

112.   RD's conduct was malicious as defined under § 27-1-221(2), MCA, entitling Plaintiff to an award of punitive damages.

**WHEREFORE, Plaintiff prays for Judgment individually, jointly, and/or severally against both Defendants by the Court or Jury:**

1.   That she be awarded all her actual and statutory damages, along with interest on damages;

2.   That she be awarded damages for embarrassment, emotional distress and loss of quality of life;

3.   That she be awarded her attorney's fees;

4.   That she be awarded treble damages pursuant to § 30-14-133, MCA;

5.   That punitive damages be awarded in an amount to be specified at trial;

For such other and further relief as may be just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATE: January 29th, 2016.

Respectfully submitted,

By: _____
Jessie Lundberg
Rochelle Loveland
*Attorneys for Plaintiff*

21